Karen E. Lentz, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs September 13, 1982, to Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Gerald E. Ruth,* for petitioner.

*Charles G. Hasson,* Associate Counsel, with him *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., November 18, 1982:

Claimant appeals from a determination by the Unemployment Compensation Board of Review (Board) that she is ineligible for benefits under the provisions of Section 402(a) of the Unemployment Compensation Law (Law),[1] because she did not indicate a willingness to accept suitable work proffered by her former employer. Claimant asserts before this Court that she had good cause for her failure to report to work on the days pertinent to this case.

Both parties agree that after a valid separation from her employment at Maple Donuts, claimant Lentz was offered re-employment at the same terms and conditions under which she had previously worked. There is a discrepancy in the parties' recollection of what transpired thereafter. Claimant testified that she went to work on the night of March

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(a), which states in pertinent part:

An employe shall be ineligible for compensation for any week—

(a) In which his unemployment is due to failure, without good cause . . . to accept suitable work offered to him. . . ,

16-17 and actually worked from midnight until late morning. The employer asserts that she "showed up and caused a lot of conflict and we have not seen her since."[2] Claimant contends that her absence after the seventeenth was occasioned by illness.

The final communication between the claimant and the employer, a telephone conversation which claimant initiated, took place on March 24, two days before the claimant was released by her physician to return to work. Claimant states that the employer fired her; he asserts that she "hung up" on him after he told her he could not run a business like that.[3] The Board, having decided this case under Section 402(a), made no determination concerning whether the termination of the employment relationship here was voluntary or involuntary.

It is undisputed that Lentz did not return to work after the March 16-17 night shift. She contends that her failure was for good cause, *i.e.* an attack of acute influenza for which she received medical attention. A certificate signed by her doctor included in the record confirms that she was treated for said condition on March 18, and that she was able to return to work as of March 26. Claimant further asserts that she was in daily contact with the individual who was training her, concerning her physical condition.[4] She testified that she did not call the employer's office because it was closed by the time her shift started, and she would wait until the last possible moment to

---

[2] The claimant was the only person present at the referee's hearing, but the employer had communicated with the Bureau of Employment Security by letter prior to the hearing.

[3] In his letter the employer expands the expression "like that" to indicate that it refers to employees upon whom he cannot rely.

[4] Although that assertion was contested by the employer in his letter to the Board, he did not present the employee who was training the claimant to testify concerning the alleged daily notification.

determine whether she could come to work each evening.

The Board made five findings of fact, which can be summarized as follows:

(1) the claimant had previously had a valid separation,

(2) she was offered re-employment, effective March 13,

(3) the proffered work was suitable,

(4) "claimant did not report to work on March 13, 1980, or any time thereafter," and

(5) claimant did not further investigate the job offer.

This Court's review of unemployment compensation cases is delimited by an evaluation of whether the Board committed an error of law, and whether the findings made by the Board are supported by substantial evidence. *Schiazza v. Unemployment Compensation Board of Review,* 54 Pa. Commonwealth Ct. 110, 420 A.2d 33 (1980).

In this instance, we perceive that Finding No. 4 above is not supported by the record, and, indeed, is contradicted in three particulars: (1) by the claimant's testimony that she worked the night of March 16-17, (2) by the statement in a letter from her employer to the Bureau that she "showed up" on the 16th, and (3) by her pay stub from Maple Donuts,[5] which indicates that for the pay period ending March 30, claimant was paid for 11.50 hours of work. Because Finding No. 4 is critical to the Board's deter-

---

[5] Although the claimant referred to her pay at the hearing— "well here is my pay"—the stub does not appear to have been made part of the record until claimant obtained legal counsel, who filed a Motion for Reconsideration with the Board, and attached the pay stub to the Motion as an exhibit. Under the provisions of 34 Pa. Code §101.11(b) the request for reconsideration is part of the record subject to the review of this Court.

mination that claimant failed to accept suitable employment, we must vacate the order here appealed from, and remand the case to the Board.

A remand is necessary in this matter because, as we previously noted, the Board did not reach the question of whether the claimant quit or was fired[6] during the telephone conversation of March 24, or alternatively, whether she simply abandoned her employment thereafter. It is beyond our scope of review to make such factual determinations. We therefore remand to the Board for further proceedings not inconsistent with this decision.

### ORDER

. AND Now, this 16th day of November, 1982, the Order of the Unemployment Compensation Board of Review dated September 30, 1980, Decision No. B-188205, is hereby vacated. The case is remanded to the Board for further proceedings.

---

[6] This Court has previously held that although illness may justify an involuntary termination of the employment relationship, it does not, *prima facie,* constitute willful misconduct, so as to preclude the receipt of benefits by the employee. *Kindrew v. Unemployment Compensation Board of Review,* 37 Pa. Commonwealth Ct. 9, 388 A.2d 801 (1978).